**Randolph PHILLIPS, Plaintiff-Appellant,**

v.

**John D. MURCHISON, Defendant-Appellee.**

**No. 257, Docket 30615.**

United States Court of Appeals
Second Circuit.

Argued Dec. 15, 1966.

Decided Aug. 23, 1967.

Randolph Phillips, pro se.

Stuart N. Updike, Townley, Updike,
Carter & Rodgers, J. Howard Carter,
Lee W. Meyer, Ronald S. Daniels, Anson

M. Keller, New York City, for defendant-appellee.

Before WATERMAN, MOORE and FEINBERG, Circuit Judges.

PER CURIAM:

Appellant, who commenced this diversity action in the United States District Court for the Southern District of New York, alleging he had suffered defamation and other wrongs at the hands of the defendant, appeals from orders adverse to him entered below by Judge Dawson and by Chief Judge Ryan. His amended and supplemental complaint contains fourteen counts. Judge Dawson dismissed counts 1 through 5, and counts 8, 13, and 14, as failing to state claims or causes of action upon which relief could be granted.

Appellant has taken no appeal from the dismissal of two of these counts, counts 4 and 5.

Defendant-appellee Murchison some months later moved for summary judgment in his favor and, upon consideration of the motion, Chief Judge Ryan granted a final appealable judgment for appellee. He did not disturb Judge Dawson's disposition of the counts that Judge Dawson had dismissed and he dismissed the remaining six counts, counts 6, 7, 9, 10, 11, and 12. Thereafter appellant timely appealed these determinations (except from the dismissal of counts 4 and 5).

We of the majority are in complete agreement with the position taken by our brother Moore in his dissenting opinion that the dismissal orders entered below as to counts 3, 6, 7, 8, 9, 10, 11, 13, and 14 should be affirmed. Moreover, we of the majority do not cavil with the statement of facts underlying these proceedings and the factual references to the history of the Alleghany litigation as he has set them forth, and therefore we do not find it necessary to discuss for ourselves that dramatic backdrop to the Phillips action.

We of the majority consider that we are required to hold that counts 1, 2, and 12 are properly pleaded, and that they set forth claims upon which relief could be granted.

Succinctly stated, it is our understanding that under the latest New York state judicial pronouncements made in Williams v. Williams, 27 A.D.2d 550, 275 N.Y.S.2d 425 (2d Dep't 1966), and in Chappelle v. Gross, 26 A.D.2d 340, 274 N.Y.S.2d 555 (1st Dep't 1966), decisions handed down subsequent to the orders appealed from here, those orders as to counts 1, 2, and 12 must now be reversed. Our brother Moore distinguishes these cases and relies upon New York trial bench decisions by New York State Justices Streit and Silverman in a collateral action brought by Phillips in the New York courts. Portions of these decisions are quoted in the dissenting opinion.

It would seem that these decisions by Justices Streit and Silverman handed down in the action Phillips brought in the New York courts are in line with the traditional New York law relative to allegations which must be set forth in complaints seeking damages for malicious prosecution and abuse of process, but the two recent Appellate Division decisions indicate a change in the rule.

In Chappelle v. Gross, supra, the court dividing 3–2 held that a complaint alleging that "the institution of the suit, with its accompanying *lis pendens*, was willful, malicious and without probable cause, with intent to injure the plaintiffs and to prevent them from conveying title to others with whom plaintiffs had a valid written contract of sale" was sufficient to survive a motion to dismiss. The *lis pendens* is a provisional remedy but a very mild one which affords little interference with person or property compared to arrest, attachment, etc., and the case thus seems to be a weakening of the requirements of interference with person or property.

Soon after the *Chappelle* case was decided by the First Department, the Second Department handed down the decision upon which Phillips heavily relies, Williams v. Williams, supra. In that case, also by a divided court, 3–2, the

court upheld a complaint alleging that an action was instituted "not with the intention of prosecuting it as a lawsuit, but solely for the purpose of ruining plaintiff's business reputation * * * *" despite the absence of any allegation of interference with plaintiff's person or property. The case is also important here because it draws the distinction, a distinction not apparent on the face of the New York Civil Rights Law, McKinney's Consol.Laws, c. 6, § 74, between, on the one hand, a litigant's publication of a complaint to news media which media may if they wish abstract a true and fair report for further news publication, and, on the other, his direct publication of a complaint to private individuals.

Applying the principles of the *Williams* case to the various counts of Phillips's complaint, it is clear to us that counts 1 and 2 must be upheld. The allegations made by Phillips in counts 1 and 2 of his amended and supplemental complaint are not dissimilar to those alleged in Williams v. Williams, supra.

The court in *Williams* described the plaintiff's allegations as follows:

> Liberally construed, the first cause of action alleges that defendant Robert W. Williams caused a corporation to institute a false, defamatory action against plaintiff, not with the intention of prosecuting it as a lawsuit, but solely for the purpose of ruining plaintiff's business reputation by widespread publication of the accusations made against plaintiff in that action; and that both defendants accomplished such improper purpose by deliberately and maliciously mailing copies of the defamatory complaint to many others in plaintiff's trade. 27 A.D.2d at 550, 275 N.Y.S.2d at 426.

It held that these allegations sufficiently pleaded a cause of action for abuse of process or, if not abuse of process, at least "a cognizable tort for which the law will provide a remedy." 27 A.D.2d at 550, 275 N.Y.S.2d at 426.

Counts 1 and 2 of Phillips's complaint allege, *inter alia*, that one Jesse Holland, acting as an agent of defendant John D. Murchison, filed a verified complaint in the name of plaintiffs who did not know anything about the subject matter of the action, and that the complaint charged Phillips with "perpetrating fraudulent and conspiratorial acts" with regard to the settlement of two derivative actions, involving Alleghany Corporation, that the complaint was sham (and indeed was subsequently stricken as such in a reported decision of the District Court for the Southern District of New York, Freeman v. Kirby, 27 F.R.D. 395 (SDNY 1961)), that it was filed "in furtherance of a conspiracy maliciously to use the process of this Court * * * *" to injure Phillips, and that the contents of the complaint were published to various news media by Holland. Count 1 states that these acts constitute a malicious use of process, and count 2 states that they constitute an abuse of process.

■ As in *Williams*, these allegations sufficiently plead abuse of process or some other tort because they charge the "misuse of legal process to accomplish an improper, collateral purpose (citing cases)." 27 A.D.2d at 550, 275 N.Y.S.2d at 426. Inasmuch as that case, the best available current authority on New York law, holds that an interference with a plaintiff's person or property is not a necessary allegation in an abuse of process or malicious prosecution complaint, counts 1 and 2 state a cause of action under New York law.

■■ As we have stated, the court is unanimous that counts 6, 7, 9, 10, and 11 were properly dismissed. They all involve the publication of the contents of various complaints to various news media, and New York Civil Rights Law § 74 is a good defense to such a situation. Lewis v. Chemical Foundation, Inc., 262 N.Y. 489, 188 N.E. 33 (1933); Oglesby v. Cranwell, 250 App.Div. 720, 293 N.Y.S. 67 (2d Dep't 1937). Count 12, on the other hand, involved publication of the complaint directly to named individuals, not news media, and we of

the majority hold that it states a good cause of action.

The court in *Williams* held that the allegations set forth supra were not insufficient as a matter of pleading, before the defendants' answer, to support a claim for libel because the allegations indicated "there was never any 'fair and true report' of the defamatory action by disinterested outsiders, but only the primary and sole publication of it by defendants' malicious mailing, to numerous persons in the trade, of the complaint * * *." 27 A.D.2d at 551, 275 N.Y.S. 2d at 427.

Count 12 of Phillips's complaint alleges, *inter alia*, that Murchison mailed copies of the complaint in an action by Murchison against Phillips and others to various named individuals in Minnesota, Ohio, Illinois, Delaware, and Canada and that the allegations in the complaint were "false, malicious, and defamatory."

■ We are of the opinion that under *Williams* this allegation sets forth a pleaded cause of action for libel. It is true that in other counts Phillips charges Murchison with causing similar information to be published in various newspapers so that the sole alleged publication of the material was not limited to individual persons, as in *Williams*. However, the *Williams* court could not have intended to allow a defendant, who has brought a lawsuit for "an improper, collateral purpose," to insulate himself from liability for his direct publication of a libel to individual persons by the fact that he also made the statement available to the press.

■ We recognize that the *Chappelle* and *Williams* decisions upon which we base reversal were by intermediate, not final, state appellate courts, both of which were divided 3–2. However, making our best "estimate" of "what the state court would rule to be its law", Bernhardt v. Polygraphic Co., 350 U.S. 198, 209, 76 S.Ct. 273, 279, 100 L.Ed. 199 (1956) (concurring opinion of Frankfurter, J.) we feel required to reverse the judgment as to counts 1, 2, and 12.

We are informed that appeals from both the *Chappelle* and *Williams* decisions have been allowed to the New York Court of Appeals, but have no record information as to whether anything further has transpired in those cases in that court. The possibility of waiting for definitive rulings by the Court of Appeals has, of course, occurred to us. However, in view of the length of time that has elapsed since plaintiff filed his complaint, we do not feel justified in delaying our decision indefinitely. If our "estimate" of New York law, as evidenced by those two cases, should prove to be wrong, we are consoled by the knowledge that these remaining three counts will probably not reach trial before the New York Court of Appeals rules, if the appeals are pressed; the trial court, if it deems it advisable to do so, may delay trial for a reasonable period (although allowing pre-trial proceedings to continue in normal fashion) to await guidance from New York's highest court.

We affirm the judgment below except for counts 1, 2, and 12. As to these counts, the judgment is reversed, and the cause is remanded for further proceedings below.

MOORE, Circuit Judge (dissenting as to counts 1, 2 and 12):

Randolph Phillips (Phillips), plaintiff-appellant, appeals from a judgment dismissing his amended and supplemental complaint (the complaint). The defendant-appellee, John D. Murchison, was the only defendant served, although his brother, Clint W. Murchison, was named as a defendant in the complaint. Counts 1–5, 8, 13 and 14 were dismissed on motion (Dawson, D. J.—opinion unreported); subsequently, on motion for summary judgment and on motion of Phillips to vacate the Dawson order of dismissal, Counts 6, 7, 9, 10, 11 and 12 were dismissed, the motion to vacate was denied and judgment of dismissal entered (Ryan, D. J.; D.C., 252 F.Supp. 513). The appeal does not include Counts 4 and 5.

The complaint, containing 14 counts, is based upon three legal theories (1) malicious use and abuse of legal process (malicious prosecution); (2) defamation; and (3) violation of certain sections and rules of the Securities Exchange Act of 1934.

The bibliographical material relevant to an understanding of the issues on this appeal is to be found in various opinions which comprise the Alleghany, Kirby, Murchison, Phillips saga Alleghany Corp. v. Kirby, 218 F.Supp. 164 (S.D.N.Y. 1963), affirmed, 333 F.2d 327 (2d Cir. 1964), affirmed en banc, 340 F.2d 311 (2d Cir.), cert. granted sub nom, Holt v. Alleghany Corp., 381 U.S.. 933, 85 S.Ct. 1772, 14 L.Ed.2d 698 (1965), dismissed after argument as improvidently granted, 384 U.S. 28, 86 S.Ct. 1250, 16 L.Ed.2d 335 (1966).

For almost twenty years, a modern War of the Roses has been fought on judicial battlegrounds between the Kirby and Murchison forces. Each side has come to the fray well equipped with all the manpower essential to legal warfare, i. e., astute counsel, financial advisers, and imaginative public relations generals. Over the years, victories have been gained, defeats suffered, but the persistence of the litigants and the always available replacements from the Bar have enabled the war to continue. Anomalously enough, the bitterest battle arose over the treaty of peace. Although not an original combatant, Phillips, wearing neither a white nor a red rose, had kept more than in casual touch with the two camps. He had been a consultant to Brussel in the *Breswick*[1] litigation, to Graubard in the *Zenn*[2] suit, he had participated in the New York Central proxy fight, he had been a participant in discussions relating to a settlement of the stockholders' derivative suits and, in fact, had been regarded as controlling the minority stockholders' litigation. Whether Phillips was primarily responsible for the settlement of the stockholders' suits, he, at least, had an important role. Little wonder then that, when it suited Alleghany's interest to challenge the propriety and fairness of the settlement, charges should be leveled at the principal participants such as are evidenced by the allegation (Complaint par. 44, Alleghany Corporation v. Kirby, D.C., 218 F.Supp. 164, 176) that in return for Phillips' betrayal of his fiduciary duty to Alleghany, its stockholders and others and in return for his advocacy in obtaining for Kirby a settlement favorable to Kirby, Kirby undertook to secure for Phillips a directorship in Investors Diversified Services, Inc. (IDS), employment as a consultant by IDS and other emoluments.

On September 7 and 8, 1960, suits were commenced by stockholders on behalf of Alleghany against Allan P. Kirby, Fred M. Kirby, Phillips, Charles T. Ireland, Jr., and others, in substance, to nullify the Kirby settlement releasing him from any liability in the original stockholders' suit.[3] The two main issues in those suits, formulated after pre-trial conferences, were (1) whether there was a corrupt agreement between Kirby, Phillips and Ireland, whereby a settlement was made for an amount far less than otherwise under which settlement Phillips and Ireland personally benefited, and (2) whether Kirby failed to adduce on the court hearings facts material to a proper evaluation of Kirby's liability which were essential to a determination of the fairness and adequacy of the settlement.

The district court dismissed the complaint (Alleghany then under Murchison

1. Breswick & Co. v. Briggs, 135 F.Supp. 397, S.D.N.Y.1955.

2. Zenn v. Anzalone, 17 Misc.2d 897, 191 N.Y.S.2d 840, 46 Misc.2d 378, 259 N.Y.S. 2d 747.

3. Freeman et al. v. Kirby et al., (Sup.Ct. N.Y.Co.); Freeman et al. v. Kirby et al., 27 F.R.D. 395 (U.S.D.C.S.D.N.Y.); and Murchison et al. v. Kirby et al., 27 F.R.D. 14 (U.S.D.C.S.D.N.Y.). The Freeman suits were dismissed; the Murchison suit was tried.

control had become the plaintiff) finding that Alleghany which had the burden of proof had failed completely to establish a breach by Phillips of a "fiduciary obligation to the minority stockholders in that he made a secret agreement for his own benefit which was not revealed to the Court" (p. 182). The district court then proceeded to find affirmatively that Phillips' directorship on the IDS Board did not warrant the conclusion that this nomination was pursuant to a pre-existing agreement. As to Kirby's alleged failure to produce facts essential to a proper determination of a fair settlement, the district court held that any such failure was not a basis for a collateral attack upon the judgment.

This judgment came before this court for appellate review and was affirmed. 333 F.2d 327 (2 Cir. 1964). No appeal was taken from the district court's finding that there was no fraudulent agreement between Kirby and Phillips.

Piqued by the allegations (aspersions to him) in the September 8, 1960 derivative suit Murchison complaint, Phillips embarked upon a litigious campaign against his erstwhile colleagues, associates, employers and friends (?).

In September 1960, Murchison and others sought by proxy contest to secure for themselves the management of Alleghany then in Kirby's control. Phillips, a paid consultant to Kirby and Alleghany, on February 24, 1961, commenced a derivative action wherein he sought to enjoin a proxy contest. His attempt voluntarily to dismiss this suit being denied by the court, he then served (March 19, 1961) an amended complaint in which he added a charge of libel against Murchison. Over two years later, upon motion for summary judgment, all counts except Count 2 were dismissed. A second amended complaint was also dismissed. Then followed the present amended and supplemental complaint.

*The Dawson Opinion*

Judge Dawson dismissed Count 1 (malicious use of process), Count 2 (malicious abuse of process), Count 3 (malicious violation of Rule 11, F.R.Civ.P.), and Count 14 (malicious use and abuse and inequitable and alleged harassment) as failing to state claims upon which relief could be granted. No appeal was taken as to this dismissal.

Count 1 alleged that a suit entitled Freeman and Manaster v. Kirby, Phillips et al., in the Federal court was brought "in furtherance of a conspiracy maliciously to use the process of this [Federal] Court and the New York State Supreme Court to the injury and damage of plaintiff." A similar suit was brought in the New York State Supreme Court. The suit was a derivative action on behalf of Alleghany and was characterized as seeking relief to obtain a vacature of the settlement [of other previous lawsuits in the Federal and State courts] as to Kirby only." 27 F.R.D. 395, 396.

Count 2 made the same charges with the conclusory allegation that Murchison was part of a conspiracy "maliciously to abuse the process of this Court and the New York State Supreme Court."

Count 3 alleged a conspiracy maliciously to violate Rule 11 of the Federal Rules of Civil Procedure.

Judge Dawson concluded that it is the law of New York that to sustain a complaint in a civil litigation based on malicious prosecution, there must be an allegation that the plaintiff's person or property was interfered with in connection with the prior proceeding. Because there were no allegations of special circumstances which would take the case out of the general rule of interference with person or property, he dismissed Count 1.

The "abuse of process" count (#2) was found to be defective for the reasons applicable to count 1 and, in addition, because the bad faith alleged was in the institution of the action—not conduct after the action had been commenced.

*The Ryan Opinion*

Judge Dawson died in August 1964. On November 2, 1965, Murchison moved for summary judgment (Rule 56(b) F. R.Civ.P.), dismissing Counts 6, 7, 9, 10, 11 and 12 of the amended and supplemental complaint, and plaintiff moved to vacate so much of the Dawson order dated May 8, 1964, from which no appeal had been taken which had dismissed Counts 1, 2, 3, 8, 13 and 14. Judge Ryan denied Phillips' motion to review Judge Dawson's dismissal of Counts 1, 2, 3, 8 and 13, and addressed himself to Counts 6, 7, 9, 10, 11 and 12. The court held that there was a judicial proceeding pending at the time of the publications, that New York law applied even to the out-of-state publications (Counts 11 and 12), and that the publications were a fair and true report of the judicial proceeding which they purported to report. Accordingly, the court held that Counts 6, 7, 9, 10, 11 and 12 should be dismissed because the alleged defamations were absolutely privileged under the statute (Sec. 74, supra).

While his Federal court action was in progress, Phillips also had pending a suit in the State court based upon similar charges. In Phillips v. Alleghany Corporation, New York Law Journal, December 29, 1965, p. 16, cols. 6–8, Phillips had made charges against Alleghany of malicious prosecution and abuse of process (Counts 1 and 2 here) based upon the institution of the Murchison (Alleghany) v. Kirby et al., suit in the Federal court. As to the malicious prosecution charge, the court (Mr. Justice Streit, New York Supreme Court) dismissed it, saying:

"An action for malicious prosecution of a civil proceeding cannot be maintained where there has been no showing that the plaintiff's person or property was the subject of interference in the prior action by a provisional remedy such as arrest, attachment or injunction or otherwise,"

citing Sachs v. Weinstein, 208 App.Div. 360, p. 365, 203 N.Y.S. 449, 453, wherein the court said that without such interference a

"defendant, although successful is not entitled to maintain an action for malicious prosecution against the plaintiff, notwithstanding such action may have been prosecuted without probable cause and maliciously, and resulted in damage to the defendant in excess of the costs recovered by him."

See also Paul v. Fargo, 84 App.Div. 9, 82 N.Y.S. 369.

Dismissing the abuse of process cause of action, the State court said:

"An ulterior motive in the use of court process is not enough. There must be a further act done outside the use of the process, some perversion of the process (Hauser v. Bartow, 273 N.Y. 370, 374, 7 N.E.2d 268)."

Although the charges in the State Supreme Court case were based upon the Murchison suit, the Freeman suit was no different in theory and the same legal principles apply.

Phillips did not appeal from this decision. Instead he took advantage of leave to replead the fourth cause of action, also dismissed, which added to previous allegations the proxy fight motive.

This amended complaint, the gravamen of which was "that he was sued maliciously and without probable cause in a civil action," was also attacked as insufficient and suffered the same fate. In dismissing it, Mr. Justice Silverman (now Surrogate) held (New York Law Journal, June 8, 1966, p. 17, col. 6) that:

"As a cause of action for malicious prosecution, the complaint is insufficient for failure to allege an interference with plaintiff's person or property by a provisional remedy in the previous action";

that

"[T]here are reasons for the imposition of barriers to maintenance of ma-

licious prosecution causes still recognized as valid in this jurisdiction.";
and that

"Avoidance of these barriers may not be had by denominating the cause as one of prima facie tort * * *."

Despite no decision by the New York Court of Appeals changing, or even throwing any doubt as to the law as declared in previous decisions, the majority believe that two 3–2 decisions in the First and Second Departments of the Appellate Division of the New York Supreme Court, *Chappelle* and *Williams*, supra, now establish as the law that "an interference with a plaintiff's person or property is not a necessary allegation in an abuse of process or malicious prosecution complaint"—at least they say that this is their best estimate. Of course neither case stands for any such proposition. *Chappelle* involved a definite interference with property, namely, the filing of a *lis pendens; Williams* was based on the allegation that the suit was brought "not with the intention of prosecuting it as a lawsuit, but solely for the purpose of ruining plaintiff's business reputation by widespread publication of the accusations made against plaintiff".

The complaint under consideration in *Williams* was radically different from the complaint before us. On its face, the complaint here shows that the purpose of the action was, in a derivative action on behalf of Alleghany Corporation against Kirby, Phillips and Ireland, to attack the settlement of two other derivative actions brought on behalf of Alleghany (Zenn v. Anzalone and Breswick & Co. v. Briggs). In the light of this allegation, which must be accepted for the purposes of this decision, it is clear that the allegations which the court in *Williams* deemed essential are not present here. Nor could they very well be made since Phillips can scarcely allege that there was no intention to prosecute and that the action was brought solely to ruin his reputation. The requirement of allegations which state a cause of action is not outmoded in these rapidly changing legal times because defendants are still entitled to have plaintiffs prove their charges.

In *Chappelle,* the court held that a complaint alleging that "the institution of the suit, with its accompanying *lis pendens,* was willful, malicious and without probable cause, with intent to injure the plaintiffs and to prevent them from conveying title to others with whom plaintiffs had a valid written contract of sale," was sufficient to survive a motion to dismiss (appeal pending in New York Court of Appeals). Furthermore, the comments in dissent of Mr. Justice Steuer in my opinion state a sounder policy, i. e., "If every successful defendant could turn around and sue the plaintiff and, by a liberal use of the word 'malicious' state a cause of action, a never ending source of new litigation would have a forum. Questions once thought to have been put to rest could be relitigated almost without limit. Judgment should mark the conclusion of the disputes between the parties and not be an invitation to further litigation." 26 A.D.2d at 345, 274 N.Y.S.2d at 561.

The issues sought to be revived in this action have been litigated and re-litigated. There is no reason to believe that New York law departs from the policy of finality of judgment. Nor is there reasonable expectation that the New York Court of Appeals will reverse the principles well established during the years by the decisions expounding New York law relied upon by Judge Dawson and Justices Streit and Silverman.

The fallacy of the majority is the assumption that the allegations of counts 1 and 2 "are not dissimilar" to those in *Williams.* Even if *Williams* were to change the New York law as to abuse of process actions and to set new requisites of a valid cause of action, plaintiff will indeed be hard put on any trial to prove (1) lack of intention to prosecute a lawsuit and (2) that the suit was brought "solely" to injure plaintiff. On its face, the complaint reveals that the suit was brought to upset a settlement in a stockholders' derivative suit.

Even in this so-called liberal age of notice pleading, the old requirement of *allegata et probata* ought not to be sloughed off and plaintiff ought to assume the burden of the "allegata" so that at the end of his case defendant can point to the failure of the "probata."

In short, I would affirm Judge Ryan's judgment in its entirety. Phillips has had his "day" in court. A "day" even in Dickensian law should not be a lifetime.